**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

David Meador, )
) No. 06 C 2705
      Plaintiff, )
)
    v. )
) Magistrate Judge Arlander Keys
Metropolitan Water Reclamation )
District of Greater Chicago, )
)
      Defendant. )

**MEMORANDUM OPINION AND ORDER**

I. *Background Facts*

In 1991, David Meador began working for the Metropolitan
Water Reclamation District of Greater Chicago ("the District") as
an Operating Engineer I ("OE-I"). In this capacity, Mr. Meador
operated or assisted in the operation of a variety of machines
such as pumps, blowers, boilers, and centrifuges at water
reclamation plants, pumping stations, or sludge disposal
facilities in the metropolitan Chicago area. At some point
during his employment, Mr. Meador began experiencing depression,
anxiety, and panic attacks. During the period from May 2001 to
September 2005, Mr. Meador made three requests to the District
for accommodations because of various problems associated with
these disabilities. The District granted the first accommodation
request and denied the next two.

In May of 2001, Mr. Meador worked as a "swing" OE-I position

at the District's Stickney Plant, which required him to fill in at different OE-I positions on a regular basis. On May 22, 2001, Mr. Meador wrote a letter to the District's Equal Employment Officer/Training Officer, Frances Wilkins, and requested an appropriate accommodation that would minimize his anxiety and panic. In the letter he stated, "[b]eing moved from one job assignment to another and never knowing what to expect has caused me a greater amount of stress." *Letter from David Meador to Frances Wilkins,* May 22, 2001 (attached as Exhibit D in the Exhibits to Defendant's Rule 56.1 Statement of Facts). Mr. Meador asked for "consistent job placement to an assignment that I am familiar with such as Concentration while under treatment." *Id.* In response to the District's request for information from one of Mr. Meador's treating physicians, Dr. Scott Robertson replied that Mr. Meador required "a job placement that is consistent and permanent and one with which he is familiar" to help alleviate his stress and anxiety problems. *Letter from Dr. Scott D. Robertson to Frances Wilkins,* June 6, 2001 (attached as Group F in the Exhibits to Defendant's Rule 56.1 Statement of Facts). At the same time, in response to detailed questions from the District, Dr. Robertson stated that Mr. Meador's condition was temporary and would improve in six months. Based upon these representations, the District granted Mr. Meador's request on

2

July 16, 2001 and provided a six month assignment to the Stickney
Concentration Facility. The terms of the accommodation provided
that, at the conclusion of the six-month period, Mr. Meador was
to return to relief duties in any of the operating engineer
assignments at Stickney. In reality, however, Mr. Meador
continued to work at the Concentration Facility until April 2003.
By his own admission, Mr. Meador experienced very little anxiety
and very few panic attacks while he was assigned to the
Concentration Facility.

On April 22, 2003, the District assigned Mr. Meador to the
Post Building at the Stickney Plant. At this facility, Mr.
Meador was responsible for filling up railroad cars and trucks
with piles of biosolids or "sludge" as the material dropped off a
series of conveyor belts, which he controlled from a seated
position at a console overlooking the belts. Mr. Meador
perceived this position as the "least desirable" in the plant.
Meador Dep., p. 71. Approximately two weeks after his relocation
to the Post Building, on May 7, in another letter to Ms. Wilkins,
Mr. Meador requested a more stable assignment and one in which he
was free to take breaks. In the letter, Mr. Meador stated, "I
have been suffering from depression, anxiety, and panic attacks
over the past two years. My impairment has left me feeling ill,
nervous, and stressful. It has affected my work, family, and

other relationships." *Letter from David Meador to Frances Wilkins*, May 7, 2003 (attached as Exhibit M in the Exhibits to Defendant's Rule 56.1 Statement of Facts). Furthermore, he claimed to have anxiety and stomach problems as a result of his condition. He stated that "[t]he East Digesters or Concentration Facility would be a more stable assignment. My existing placement calls for extreme attention and concentration, therefore my mistakes that occur may cause extensive consequences and thus accelerate my impairment." *Id.*

From the record, it appears that the District implemented the same procedure for the second request as it did for the first request. In a May 12, 2003 letter, Frances Wilkins requested information about Mr. Meador's condition from his treating physician, Dr. Robertson. In response, Dr. Robertson stated that Mr. Meador's "physical condition/impairment is over two years in control. It has reactivated as recently as April 20, 2003. David has had severe anxiety and depression with panic attacks. He has suffered emotional and mental anguish that has affected his health in thinking, sleeping, and caring for himself and his family." *Letter from Dr. Robertson to Frances Wilkins*, May 28, 2003 (attached as Exhibit P in the Exhibits to Defendant's Rule 56.1 Statement of Facts). On July 28, 2003, Thomas K. O'Connor, Chief of Maintenance and Operations, sent an interoffice

memorandum to the District's Director of Personnel regarding the accommodation decision. Mr. O'Connor wrote, "Mr. Meador's request to work exclusively at either the East Digesters or Concentration Facility would create an undue hardship on [Maintenance and Operations]. Every OE-I at [Stickney] is expected to make frequent equipment checks and must be alert and vigilant at all times. While Mr. Meador may feel that his current assignment requires 'intense detail,' all OE-I assignments require comparable attention to detail." *Interoffice Memorandum from Thomas K. O'Connor to Matthew H. Menze*, July 28, 2003 (attached as Group Q in the Exhibits to Defendant's Rule 56.1 Statement of Facts). In an August 20, 2003 letter, the District's Director of Personnel denied Mr. Meador's second request for an accommodation.

Shortly before the District denied his second accommodation request, Mr. Meador took Ordinary Disability status and stopped working. He was off work from July 4, 2003 until August 6, 2006. During this time, he received fifty percent of his salary from the District and the same medical benefits he received when he worked full-time. During this period, Mr. Meador was able to perform general housekeeping and domestic tasks, including cooking meals and picking up his daughter from school, as well as leisure activities including reading, watching television, and

some light exercise such as biking and jogging. Mr. Meador
returned to work without any restrictions on August 7, 2006, just
two days before his disability benefits were scheduled to expire.

While out of work on Ordinary Disability, Mr. Meador made a
third request for an accommodation. In a letter dated September
2, 2005, some two years after his second request, Mr. Meador
wrote that he suffered from depression and anxiety, and that
these impairments limited his daily activities of thinking,
hearing, breathing and caring for himself. *Letter from David
Meador to Linda S. Dunlop*, September 2, 20005 (attached as
Exhibit R in the Exhibits to Defendant's Rule 56.1 Statement of
Facts). He also stated that these impairments diminished his
ability to care for himself and his family. In his third
request, Mr. Meador asked for a consistent and familiar job
placement with some flexibility for breaks and lunch.

For the third time, the District evaluated a request for
accommodation from Mr. Meador. The District denied this request
in a letter dated November 28, 2005, explaining that the
accommodations he sought would place an undue hardship on the
District, and would therefore, have to be denied. *Letter from
Patrick Foley to David Meador*, November 28, 2005 (attached as
Group S in the Exhibits to Defendant's Rule 56.1 Statement of
Facts). The letter stated that the District could not return Mr.

Meador to one of the Concentration positions because other
employees now held those jobs. Regarding his request for
consistent placement, the letter stated that the union collective
bargaining agreement dictated the "work week, seniority, and
transfer language" and controlled "the times that Operating
Engineers work." Finally, the letter stated that the union
contract, which controlled the distribution of overtime and
breaks, did not allow the District to permit the types of
overtime restrictions and breaks Mr. Meador had requested.
Despite the denial of his third request for accommodation, Mr.
Meador returned to work on August 7, 2006, and has continued to
work for the District since that time. According to his
deposition testimony, since returning to work, he has worked a
number of different assignments, including Digesters, East
Digesters, and the Post Building, without restrictions and
without incident.

## II. *Administrative Proceedings*

On September 8, 2003, Mr. Meador filed a charge of
discrimination with the Equal Employment Opportunity Commission
("EEOC") and the Illinois Department of Human Rights ("IDHR").
In the charge, he stated that "[r]espondent was made aware of my
disability in April of 2001. In May of 2003, I supplied a
request for accommodations from my doctors. On August 20, 2003,

7

Respondent has denied my doctor's requests for accommodations."
*David Meador EEOC Charge of Discrimination*, September 8, 2003
(attached as Group V in the Exhibits to Defendant's Rule 56.1
Statement of Facts). The EEOC issued a determination on August
31, 2005, finding "reasonable cause to believe that Respondent
discriminated against [Mr. Meador]." *EEOC Determination Letter
to David Meador*, August 31, 2005 (attached as Group V in the
Exhibits to Defendant's Rule 56.1 Statement of Facts). The EEOC
referred the matter to the United States Department of Justice,
which ultimately decided not to file suit on Mr. Meador's behalf,
but issued a Right-to-Sue letter on February 27, 2006.

Mr. Meador filed a second charge with the EEOC and the IDHR
on January 5, 2006. This charge stated, "[o]n June 29, 2005, I
attempted to return to work and requested a Reasonable
Accommodation for my disability. On November 28, 2005, my
Reasonable Accommodation request was denied. I believe I was
discriminated against because of my disability, and retaliated
against for filing a previous EEOC charge, in violation of the
Americans with Disabilities Act of 1990." *David Meador EEOC
Charge of Discrimination*, January 5, 2006 (attached as Group V in
the Exhibits to Defendant's Rule 56.1 Statement of Facts). The
United States Department of Justice issued Mr. Meador a Right-to-
Sue letter on this charge on May 10, 2006.

On May 16, 2006, Mr. Meador filed suit in United States District Court alleging one count of disability discrimination relating to the District's denial of his second request for accommodation. On July 12, 2006 Mr. Meador amended his complaint to allege a second count of disability discrimination, this one relating to the District's denial of his third request for accommodation; he also added a retaliation claim, alleging that the District had denied his accommodation requests to punish him for filing the first EEOC charge. The parties consented to proceed before a United States Magistrate Judge, and the case was reassigned to this Court on August 11, 2006. On June 13, 2007, the District moved for summary judgment on all counts, arguing that Mr. Meador's disability discrimination claims fail because he is not a qualified individual with a disability and that his retaliation claim fails because he cannot show that any adverse action he suffered was the result of his filing the discrimination charges.

III. *Discussion*

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also*

9

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine
issue of material fact exists if the "evidence is such that a
reasonable jury could return a verdict for the nonmoving party."
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To
survive summary judgment, the non-moving party must offer more
than "mere conclusory" allegations. *Nowak v. St. Rita High
School*, 142 F.3d 999, 1002 (7th Cir. 1998). *See also Matsushita
Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)
(the non-moving party must offer more than a "metaphysical doubt
as to the material facts"). The non-moving party will lose on
summary judgment if he cannot present sufficient evidence to
support each element of his case for which he will bear the
burden of proof at trial. *Celotex*, 477 U.S. at 322. And the
Court will disregard all facts not properly supported by the
record. *Brasic v. Heinemann's Inc.*, 121 F.3d 281, 284 (7th Cir.
1997).

## A. *Mr. Meador's Disability Discrimination Claims*

Mr. Meador's complaint alleges two counts of disability
discrimination against the District; specifically, Mr. Meador
alleges that the District failed to provide him with reasonable
accommodations in violation of the Americans with Disabilities
Act ("ADA"). The ADA provides that a covered employer shall not
"discriminate against a qualified individual with a disability

10

because of the disability of such individual." 42 U.S.C. §
12112(a); *Squibb v. Memorial Medical Center*, 497 F.3d 775, 780
(7th Cir. 2007); *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789,
796 (7th Cir. 2005). The ADA requires private employers to
provide "reasonable accommodations to the known physical or
mental limitations of an otherwise qualified individual with a
disability who is an applicant or employee, unless such covered
entity can demonstrate that the accommodation would impose an
undue hardship." *Toyota Motor Manufacturing, Kentucky, Inc. v.
Williams*, 534 U.S. 184, 193 (2002) (quoting 42 U.S.C. §
12112(b)(5)(A)); *Sears, Roebuck & Co.*, 417 F.3d at 796-97.

To establish a claim for failure to accommodate, Mr. Meador
must show that: 1) he is a qualified individual with a
disability; 2) the District was aware of his disability; and 3)
the District failed to reasonably accommodate the disability.
*Id.* at 797. Here, the parties dispute whether Mr. Meador was a
qualified individual with a disability and whether the District
reasonably accommodated that disability. The District argues
that Mr. Meador is not a qualified individual with a disability
because his impairments were temporary and because he was not
substantially limited in any major life activity when he
requested accommodations. The District further argues that Mr.
Meador could not perform the essential job functions of an OE-I

11

job with or without reasonable accommodation. For his part, Mr. Meador argues that his impairments affected his ability to concentrate, sleep, eat, work, think, interact with others, and care for his himself and his family. Mr. Meador also contends that the District failed to engage in its own interactive process to assess his accommodation requests and to provide alternatives to the initial proposal.

### (1) *Qualified Individual with a Disability*

A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such an individual holds or desires." 42 U.S.C. § 12111(8). The ADA defines "disability" as "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Whether a particular impairment substantially limits a major life activity is a case-specific, individualized inquiry. *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 938 (7th Cir. 2007). Under the regulations, a physical or mental impairment means: "1) [a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological,

12

musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine; or 2) [a]ny mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities." 29 C.F.R. § 1630.2(h).

The term "substantially limits means: "[u]nable to perform a major life activity that the average person in the general population can perform; or [s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner and duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j). The following factors should be considered in determining whether an individual is substantially limited in a major life activity: "[t]he nature and severity of the impairment; [t]he duration or expected duration of the impairment; and [t]he permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2). Major life activity means functions such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(I). This list is illustrative

13

and not exhaustive. *See Bragdon v. Abbott*, 524 U.S. 624, 639 (1998) (citing similarly worded Rehabilitation Act regulations and noting that "the ADA must be construed to be consistent with the regulations issued to implement the Rehabilitation Act"). A major life activity need not be confined to those with a public, economic, or daily aspect. *Id.*

### (a) *Physical or Mental Impairment*

In order to "qualify as disabled under subsection (A) of the ADA's definition of disability, a claimant must initially prove that he or she has a physical or mental impairment." *Toyota*, 534 U.S. at 194. The regulations recognize "emotional or mental illness" impairments, and major depression certainly may constitute a disability under the ADA. 29 C.F.R. § 1630.2(h); *Ogborn v. United Food and Commercial Workers Union, Local No. 881*, 305 F.3d 763, 767 (7th Cir. 2002). Indeed, the parties do not dispute that Mr. Meador's anxiety, depression, and panic attacks amount to a mental impairment. The Court is persuaded that Mr. Meador suffers from a sufficient physical or mental impairment to qualify as disabled under the ADA framework. Mr. Meador's own testimony establishes as much. Additionally, his medical records support a finding of an impairment. In a letter dated May 28, 2003, Dr. Robertson informed the District that Mr. Meador "has had severe anxiety and depression with panic attacks.

14

He has suffered emotional and mental anguish that has affected
his health in thinking, sleeping, and caring for himself and his
family." *Letter from Dr. Scott Robertson to Frances Wilkins,* May
28, 2003 (attached as Exhibit P in the Exhibits to Defendant's
Rule 56.1 Statement of Facts). And Dr. Laurie Kenfield testified
at her deposition that she diagnosed Mr. Meador with "anxiety and
depression," "major depression," and a "panic disorder with
agoraphobia." Kenfield Dep., pp. 8-9. But evidence of a medical
diagnosis of an impairment is not enough; rather, the ADA
requires those claiming the Act's protection to prove a
disability by offering evidence that the extent of the limitation
caused by their impairment in terms of their own experience is
substantial." *Toyota,* 534 U.S. at 198. In other words, to
prevail on his claim, Mr. Meador must show that his depression,
anxiety, and panic attacks substantially limit him in one or more
major life activities.

## (b) Substantial Limitation of a Major Life Activity

On May 7, 2003, in a letter to the District's Equal
Employment Officer/Training Manager, Mr. Meador requested a more
stable assignment and one in which he was free to take breaks.
In the letter, Mr. Meador stated that throughout the past two
years he had suffered from depression, anxiety, and panic

15

attacks. He claimed that these conditions impacted his ability
to work, and that they impaired his family and other
relationships, and caused him to have sleep difficulties, anxiety
and stomach problems. In his second request for accommodation,
in a letter to the District on September 2, 2005, Mr. Meador
identified limitations in "thinking, hearing, breathing, and
caring for myself." *Letter from David Meador to Linda Dunlap*,
September 2, 2005 (attached as Exhibit R in the Exhibits to
Defendant's Rule 56.1 Statement of Facts). Furthermore, his
letter stated that the impairment also effected his sleeping and
decreased his ability to care for his family. These documents
suggest that Mr. Meador is claiming to be limited in his ability
to work, sleep, eat, and care for himself and his family. The
Court considers each in turn.

(i) *The Major Life Activity of Working*

With respect to the major life activity of working, "[t]he
term substantially limits means significantly restricted in the
ability to perform either a class of jobs or a broad range of
jobs in various classes as compared to the average person having
comparable training, skills, and abilities. The inability to
perform a single, particular job does not constitute a
substantial limitation in the major life activity of working."
29 C.F.R. § 1630.2(j)(3)(I). Rather, "one must be precluded from

16

more than one type of job, a specialized job, or a particular job of choice." *Squibb*, 497 F.3d at 782; *see also Cassimy v. Board of Education of the Rockford Public Schools, District # 205*, 461 F.3d 932, 936 (7th Cir. 2006) (holding that former principal was not substantially limited in working where depression only "impeded, but did not prevent, his ability to work" and his condition improved when he left a principal job for other administrative and teaching positions).

In *Squibb*, the plaintiff was a registered nurse serving in patient care nursing at a general services hospital. *Id.* Over the course of her employment she sustained several back injuries, which required surgery and resulted in permanent lifting restrictions after a series of temporary assignments and rehabilitation. *Id.* at 778. The defendant tested her abilities and determined that she could not meet the physical demands of a registered nurse at the hospital, but offered her alternative positions, which she declined, citing available patient care nursing positions that met her physical limitations. *Id.* at 779, 783. The court concluded that she failed to demonstrate that she was substantially limited in the major life activity of working, explaining that "[a] person cannot demonstrate that she is significantly limited in performing a 'class of jobs' when her own evidence demonstrates that there are jobs within the broad

17

parameters of her professional calling that she can perform without restriction." *Id.* at 783. The same can be said of Mr. Meador.

The record shows that Mr. Meador was able to perform a class of jobs within the District. On April 22, 2003 Mr. Meador was transferred from the Concentration Facility to the Post Building within the Stickney Plant. Mr. Meador stated that he experienced very little anxiety and very few panic attacks while he was at the Concentration Facility, but that both increased within a few days of his transfer to the Post Building. In a letter to the District on May 28, 2003, Dr. Robertson stated that "[Mr. Meador] has had severe anxiety and depression with panic attacks" and that Mr. Meador required a "stable work environment, where he is free to take breaks. Intense detail attention would further his health problems and could cause him to make mistakes." *Letter from Dr. Scott D. Robertson to Frances Wilkins,* May 28, 2003. When asked in his deposition how his impairment affected his work, Mr. Meador replied, "my concentration, attention, and missing some, you know, lost days because you are not feeling well." *David Meador Deposition,* p. 96 (attached as Exhibit A to Defendant's Rule 56.1 Statement of Facts).

At best, this might be enough to establish that Mr. Meador could not work at the Post Building. But, like the plaintiff in

18

*Squibb*, Mr. Meador admitted that there were other OE-I positions within the District that he could perform. In his May 7, 2003, request for accommodation he stated "[t]he East Digesters or Concentration Facility would be a more stable assignment." *Letter from David Meador to Frances Wilkins,* May 7, 2003 (attached as Exhibit M in the Exhibits to Defendant's Rule 56.1 Statement of Facts). He reiterated this fact during his deposition when he said, "I just gave somewhat like a recommendation [of] these two jobs as [examples of OE-I jobs] I can do." *Meador Dep.* p. 107. It is clear that Mr. Meador preferred the variety of tasks associated with placements like the Concentration Facility to the mostly sedentary work of the Post Building. But even if there may have been some job placements that were better than others because of his mental health, his impairments do not rise to the level of substantially limiting the major life activity of working unless they prohibited him from working *all OE-I positions.* And they did not. Mr. Meador admits that there were other jobs within the OE-I designation that he could perform.

Furthermore, Mr. Meador submitted no evidence that he is restricted from a broad range of jobs in various classes, including "jobs not utilizing similar training, knowledge, skills or abilities, within that geographic area, from which the

19

individual is also disqualified because of the impairment." 29
C.F.R. § 1630.2(j)(3)(ii)(c). Indeed, Mr. Meador stated that he
did not look for any jobs while he was out on Ordinary
Disability, so there is no evidence about his ability to perform
work outside the District. *Meador Dep.* p. 147. Because Mr.
Meador has not raised a triable issue of fact as to whether his
depression, anxiety, and panic attacks significantly restricted
his ability to perform either a class of jobs or a broad range of
jobs in various classes, he has not demonstrated that he is
substantially limited in the major life activity of working.

(ii) *The Major Life Activity of Eating*

Although neither Mr. Meador's accommodation requests, nor
his EEOC charges specifically say so, the Court assumes that Mr.
Meador is claiming to be limited in the major life activity of
eating. Eating is a "major life activity." *Lawson v. CSX
Transp., Inc.*, 245 F.3d 916, 923 (7th Cir. 2001). According to
the EEOC, the term "substantially limits" means, "[u]nable to
perform a major life activity that the average person in the
general population can perform; or [s]ignificantly restricted as
to the condition, manner or duration under which an individual
can perform a particular major life activity as compared to the
condition, manner or duration under which the average person in
the general population can perform that same major life

20

activity." 29 C.F.R. § 1630.2(j)(1).

In *Lawson*, the Court examined the case of an employee with Type-I diabetes and determined that the prescribed treatment of the illness substantially limited the major life activity of eating. 245 F.3d at 926. The plaintiff's condition required multiple blood tests each day to monitor his blood sugar levels. *Id.* at 924. Depending on the levels, he could be required to stop all activities to eat the particular foods that would stabilize his glucose readings. *Id.* Failure to adhere to this regimen could result in "debilitating, and potentially life-threatening, symptoms." *Id.* The Court reasoned that it was the "severity of these limitations on his ability to eat that distinguishes [the plaintiff's] situation from that of other individuals who must follow the simple 'dietary restrictions' that medical conditions sometimes entail." *Id.* at 924-925; *see also Branham v. Snow*, 392 F.3d 896, 905 (7th Cir. 2004).

Mr. Meador is not significantly restricted as to the manner in which he can eat as compared to the average person in the general population. He reported a nervous and upset stomach around the time of his second request for ADA accommodation. *Meador Dep.* p. 102. He stated that the "entrance to [his stomach] is spastic." *Id.*, p. 103. Once he had to be taken to the hospital because of trouble swallowing his food. *Id.*, p.

21

102. However, in reporting on Mr. Meador's condition to the District after the second request for accommodation, Dr. Robertson did not list difficulty eating as one of the symptoms of his anxiety and depression. *Letter from Dr. Scott D. Robertson to Frances Wilkins,* May 28, 2003. Further, in his deposition, Mr. Meador admitted that he was not "aware of" any stomach problems while working at the Concentration Facility prior to his relocation to the Post Building. *Meador Dep.* p. 102. While the Court does not deny the likelihood that Mr. Meador's mental health condition may have caused some stomach problems, based on the evidence in the record of the sporadic and moderate nature of his issues, those problems do not even come close to the problems associated with the diabetes-related symptoms in *Lawson*. Therefore, Mr. Meador is not substantially limited in the major life activity of eating.

(iii) *The Major Life Activity of Sleeping*

Mr. Meador also seems to be claiming that he is substantially limited in the major life activity of sleeping. He identified sleeping as a limitation in both the May 7, 2003 and September 2, 2005 requests for accommodation, stating that he "would just wake up and I just couldn't lose consciousness, and then I would like go to bed, and then sometimes I would have difficulty sleeping and some bad dreams." *Meador Dep.* pp. 101-

102. Additionally, a May 28, 2003 letter from his physician reiterates that Mr. Meador's condition was affecting his sleep.

But to be substantial limited in the major life activity of sleeping, Mr. Meador must establish more than occasional trouble falling asleep; he must establish "pro-longed, severe, and long-term" sleep difficulty. *Scheerer v. Potter*, 443 F.3d 916, 920 (7th Cir. 2006) (holding that plaintiff's "intermittent disrupted sleep" is not a substantial limitation); *see also Burks v. Wisconsin Department of Transportation*, 464 F.3d 744, 757 (7th Cir. 2006) (holding that plaintiff was not substantially limited in the major life activity of sleeping where she had "difficulty sleeping for more than three hours at a time, but provided no medical records or other evidence to demonstrate the effect of this situation on her ability to function in daily life). He cannot do so. By his own admission, at the time he was reassigned to the Post Building, he was getting six or six and a half hours of sleep per night. *Meador Dep.* p. 102. This would seem to be well within normal limits and may even exceed what most people get. Moreover, Mr. Meador has offered nothing to show how his sleep issues impact his daily life as compared to the lives of other people. *See Sears, Roebuck & Co.*, 417 F.3d at 801.

23

### (iv) *The Major Life Activity of Caring for Himself*

Finally, Mr. Meador claims that he is substantially limited in caring for himself and others. Under the ADA regulations, "caring for oneself" is recognized as a major life activity. 29 C.F.R. § 1630.2(I). In *Squibb*, the court held that the plaintiff was not substantially limited in the major life activity of caring for herself because of the tasks she admitted she could perform - driving, bathing, brushing her teeth, and dressing herself. 497 F.3d at 784. Here, Mr. Meador admitted that, at least as of 2005, he could feed himself and brush his teeth, he could drive, go shopping and cut the grass, and he had no issues with his hearing. *Meador Dep.* pp. 113, 116, 124. He testified that he did not keep a "positive image" and did not care about himself; he testified that on a few days he failed to shower, shave, or exercise as much as he would have liked to. *Id.*, p. 115. He testified that his "comprehension was off a little bit," and that he sometimes felt "closed off" from his family, and "high strung" and "anxious"; he testified that he sometimes felt "anger towards [his] family - you know, little things would upset me." *Id.*, pp. 98-99, 113.

This evidence suggests that Mr. Meador's condition affected his relationships - and reasonably so. But not substantially.

24

On summary judgment the plaintiff must come forward with evidence in support of his claim; "bald and self-serving assertions in affidavits, unsubstantiated by any documentation or other testimony, are not sufficient to create a material issue of fact as to whether an impairment has substantially limited a major life activity. *Burks*, 464 F.3d at 756 (quoting *Stein v. Ashcroft*, 284 F.3d 721, 726 (7th Cir. 2002)). The Court is sympathetic to Mr. Meador's condition. Mr. Meador's impairment may have made him terse or occasionally unpleasant, sluggish, or apathetic; indeed, these feelings are symptomatic of depression. But based on the evidence of the types of activities Mr. Meador was capable of performing, there is no triable issue of material fact as to whether Mr. Meador is substantially limited in the major life activity of caring for himself.

### (2) *Reasonable Accommodation*

Even if Mr. Meador could show that he is a qualified individual with a disability, his discrimination claims would still fail because he cannot demonstrate that the District failed to offer a reasonable accommodation. Under the Act, a failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee" qualifies as discrimination, "unless such covered entity can demonstrate that

25

the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A). The ADA defines undue hardship as "an action requiring significant difficulty or expense." 42 U.S.C. § 12111(10)(A). The term "reasonable accommodation" may include, "making existing facilities used by employees readily accessible to and usable by individuals with disabilities" as well as "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9).

"It is the employer's prerogative to choose a reasonable accommodation; an employer is not required to provide the particular accommodation that an employee requests." *Sears, Roebuck & Co.*, 417 F.3d at 802 (quoting *Jay v. Intermet Wagner, Inc.*, 233 F.3d 1014, 1017 (7th cir. 2000)). Moreover, the employer is "not required to shuffle job responsibilities amongst employees to create a position to accommodate" the employee's disability. *Jay*, 233 F.3d at 1017; *see also Gile v. United Airlines, Inc.*, 95 F.3d 492, 499 (7th Cir. 1996) ("[A]n employer is not required to 'bump' other employees to create a vacancy so

as to be able to reassign the disabled employee. Nor is an
employer obligated to create a 'new' position for the disabled
employee.") (citations omitted). "While the reasonableness of a
requested accommodation is generally a question of fact, certain
legal standards exist: 'An accommodation is reasonable if it is
both efficacious and proportional to the costs to implement it.
An accommodation is unreasonable if it imposes undue financial or
administrative burdens or requires a fundamental alteration in
the nature of the program.'" *Owens v. Quality Hyundai*, 2007 WL
495248, at *4 (N.D.Ill. Feb.15, 2007) (citing *Oconomowoc
Residential Programs v. City of Milwaukee,* 300 F.3d 775, 784 (7th
Cir. 2002)). Finally, the ADA does not require employers to take
actions inconsistent with provisions in a collective bargaining
agreement. *See Brotherhood of Maintenance of Way Employees v.
CSX Transp. Inc.*, 478 F.3d 814, 818 (7th Cir. 2007) (citing
*Benson v. Northwest Airlines, Inc.*, 62 F.3d 1108, 1114 (8th Cir.
1995)).

The regulations implementing the ADA require an employer to
"initiate an informal, interactive process with the qualified
individual with a disability in need of the accommodation. This
process should identify the precise limitations resulting from
the disability and potential reasonable accommodations that could
overcome those limitations." 29 C.F.R. § 1630.2(o)(3). A

"failure to engage in the interactive process, however, may give
rise to a claim only when the plaintiff can first show that a
reasonable accommodation existed." *Owens*, 2007 WL 495248, at *6.

In his last two requests, Mr. Meador sought a number of
accommodations, which the District turned down. He requested a
stable work environment along with "regular breaks without any
harassment from other employees and supervisors." *Letter from
David Meador to Frances Wilkins*, May 7, 2003. In his third
request for accommodation, Mr. Meador stated that the prior
assignment at the Concentration Facility was sufficient. *Letter
from David Meador to Linda Dunlap*, September 2, 2005. Once
again, he requested "flexibility for breaks and lunch." *Id.* He
requested day or afternoon shifts. *Id.* When asked at his
deposition about his requests for breaks at the Post Building,
Mr. Meador explained that he remembered from prior years "always
hearing that people who worked there always got some type of
break from the [Operating Engineer II] that worked alongside the
OE-I." *Meador Dep.* p. 89. Mr. Meador said that he explained to
his supervisor that he needed to have breaks "to eat my food
where I am not working while I am eating. It was getting very
difficult for me, for my anxiety and stress . . . everybody else
eats [comfortably] in the back with the kitchen table. I wasn't
given that option." *Meador Dep.* p. 87.

Although Mr. Meador requested breaks and lunch, the ADA does not require the District to violate its collective bargaining agreement ("CBA") with the operating engineers union. Section 5(E) of the CBA states that "[f]or employees working on shift, no mealtime will be allowed as part of the eight (8) hour shift, but lunch may be eaten at their work stations when and if conditions permit." *District Agreement with International Union of Operating Engineers Local No. 399, AFL-CIO*, 2000-2008 (attached as Group U to Defendant's Rule 56.1 Statement of Facts). Section 5(G) provides that "[n]o employee shall leave his/her assigned work area during working hours, unless permission is granted by his/her immediate supervisor." *Id.* Mr. Meador requested a permanent assignment at the Concentration or East Digesters facilities, but the District is not required to remove the employees working those positions in order to provide him with accommodations under the ADA. Moreover, the District is not required to provide the specific position requested.

Mr. Meador informed the District that his medical condition prohibited him from working a double-shift, however it is clear from the record that availability to work a double-shift in the event the engineer is not relieved is an important element of the OE-I position. The District's plants run twenty-four hours a day, seven days a week, and they must be fully staffed at all

29

times. *See Meador Dep.* p. 134-135. Thus, the accommodation Mr. Meador requested would pose serious risks to the District if the next shift worker were unable to relieve him after an eight-hour day. For example, the District incurs additional costs if it is required to shutdown equipment due to the absence of an Operating Engineer. *Affidavit of Henry Marks* (attached as Exhibit E to Defendant's Rule 56.1 Statement of Facts). According to Mr. Marks, the safety of the facility and employees, public health, and the environment are all in jeopardy if the District's personnel are not properly allocated. *Id.* Requiring the District to accept these administrative burdens and potentially exorbitant costs would not be reasonable. In short, Mr. Meador cannot show that the District's failure to grant the specific accommodations he requested was unreasonable or that it amounted to discrimination in violation of the ADA.

B. *Mr. Meador's Retaliation Claim*

In his complaint, Mr. Meador claims that the District retaliated against him for filing an EEOC charge against the District in 2003; specifically, he alleges that the District punished him by denying his 2005 request for accommodation and by refusing to allow him to return to work at the Concentration Facility. Even if Mr. Meador was not disabled within the construct of the ADA, it would still violate the statute if the

District retaliated against him for attempting to raise a good-faith claim under the ADA. *Cassimy*, 461 F.3d at 938. But, to survive summary judgment on a retaliation claim, the plaintiff must show evidence of retaliation through either the direct or indirect method. *Burks*, 464 F.3d at 758. Under the direct method, Mr. Meador must offer evidence that he engaged in (1) a statutorily protected activity; (2) suffered an adverse action; and (3) there was a causal connection between the two. *See Id.* (*citing Haywood v. Lucent Technologies*, 323 F.3d 524, 531 (7th Cir. 2003)).

Clearly, Mr. Meador engaged in a protected activity; the District concedes as much. He filed a charge of disability discrimination with the EEOC on September 8, 2003. With respect to this charge, the EEOC issued a reasonable cause determination on August 31, 2005. *See EEOC Letter to David Meador*, August 31, 2005 (attached as Group V in the Exhibits to Defendant's Rule 56.1 Statement of Facts). Mr. Meador must also prove that he suffered an adverse action. Although he does not specifically address this element, the Court assumes that Mr. Meador is claiming that the adverse action was a denial of his accommodation request. But the action is only adverse if he can prove that he was improperly denied a reasonable accommodation. As discussed above, there is no triable issue of material fact as

31

to whether Mr. Meador was improperly denied a request for a reasonable accommodation. Further, even if he could prove that he suffered from an adverse action, his claim would still fail because there is no evidence of a causal connection between his filing the EEOC charge on September 8, 2003 and the District's denial of his second and third requests for accommodation, which occurred on August 20, 2003 and November 28, 2005.

To prove a claim of retaliation under the direct method, "mere temporal proximity between the filing of the charge of discrimination and the action alleged to have been taken in retaliation for that filing will rarely be sufficient in and of itself to create a triable issue." *Stone v. City of Indianapolis Public Utilities*, 281 F.3d 640, 644 (7th Cir. 2002). In *Burks*, the plaintiff claimed that she was retaliated against because she complained of disability discrimination. 464 F.3d at 758. Her claim was entirely based on the timing of events that eventually led to her termination. *Id.* After her first three months with the company, she received a positive performance review. *Id.* But following the first review, she complained of discrimination. *Id.* Subsequently, she continued to receive negative reviews until her employer fired her. *Id.* Because the plaintiff presented "no evidence of a retaliatory motive other than the timing of her termination," the court found that she did not meet

her burden of proof under the direct method.  *Id*. at 759.

Like the plaintiff in *Burks*, Mr. Meador relies exclusively
on the timing of his complaints as circumstantial evidence of
retaliation.  Yet the timing is really not suspicious: he made
his second request for accommodation on May 7, 2003, and the
District denied it on August 20, 2003 - before he had even filed
any charges with the EEOC; he made his third request on September
2, 2005, and the District denied it on November 28, 2005 - more
than two years after he filed his first EEOC charge and before he
filed his second EEOC charge.  And Mr. Meador has offered no
other evidence to establish a causal link between the filing of
his EEOC charges and the District's denial of his accommodation
requests.

Mr. Meador contends that his September 2, 2005 request for
accommodation was denied on November 28, 2005 because of the
EEOC's findings in connection with his first EEOC charge.  But,
again, there is no evidence of that.  And, again, although the
timing is certainly closer to raising suspicion, suspicious
timing is not enough.  And "[s]peculation based on suspicious
timing alone … does not support a reasonable inference of
retaliation." *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918
(7th Cir. 2000).  Certainly, the time lapse between the filing of
the charge and the denial of the accommodation request raises no

flags. *See Fyfe v. City of Fort Wayne*, 241 F.3d 597, 603 (7th Cir. 2001)("In the absence of any other evidence of a causal link, the 18-month interval in this case is insufficient proof of causation"). Because Mr. Meador cannot show a causal connection between the EEOC activity and the denial of his request for accommodation, no reasonable jury could find a genuine issue of material fact under the direct method.

Under the indirect method, Mr. Meador must offer evidence that (1) he engaged in a protected activity; (2) he was subject to an adverse employment action; (3) he was performing his job satisfactorily; and (4) no similarly situated employee who did not engage in protected activity suffered an adverse action. *Burks*, 464 F.3d at 759 (citing *Stone*, 281 F.3d at 644). As explained above, the District concedes that Mr. Meador engaged in a protected activity, and, although there is no evidence on the point, the Court has no reason to doubt that he was doing his job satisfactorily. But, as explained above, Mr. Meador has failed to show that he suffered an adverse employment action. And he has failed to offer any evidence with regard to the final element. At his deposition, Mr. Meador testified that other employees were provided breaks, whereas he was not. But he has made no attempt to show that these employees were similarly situated or that they did or did not engage in a protected

activity. *Meador Dep.* pg 86-88. Because Mr. Meador has not raised a triable issue of fact under the direct or indirect methods as to whether the District retaliated against him, the Court finds that summary judgment is appropriate on Mr. Meador's retaliation claim.

IV. *Conclusion*

For the reasons set forth above, the Court finds that Mr. Meador cannot make out a case of discrimination based upon a failure to provide reasonable accommodation; nor can he prove that he was retaliated against because of his EEO activities. Accordingly, the Court grants the District's motion for summary judgment on all counts.

DATED: November 15, 2007

E N T E R E D:

Arlander Keys
United States Magistrate Judge